# IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF WISCONSIN

U.S. DISTRICT COURT
EASTERN DISTRICT-WI
FILED

2018 MAR -9 P 12: 16

STEPHEN C. DRIES
CLERK

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| -v- | ) | **Case No. 1:17-cv-01740-WCG** |
| | ) | |
| GARY LEE PANSIER TRUST and | ) | **AFFIDAVIT OF FACT** |
| JOAN R. PANSIER TRUST, | ) | |
| | ) | |
| Defendants. | ) | |

---

## AFFIDAVIT OF FACT

---

Gary Lee Pansier, Authorized Representative of GARY LEE PANSIER, TRUSTEE for GARY LEE PANSIER TRUST, and Joan R. Pansier, Authorized Representative of JOAN R. PANSIER, TRUSTEE for JOAN R. PANSIER TRUST, hereinafter your "Affiants" being first duly sworn, depose and say that: All facts stated herein are true, correct and certain, to the best of our knowledge:

<u>STATEMENT OF FACT</u>

1. Your Affiants are the Grantor/Beneficiary of any Legal Case arising as a result of or in conjunction with this *prima facie* evidentiary statement of facts where your Affiants are deemed or determined to be Defendants;

2. Your Affiants do not conduct business within the judicial jurisdiction, do not reside in the judicial jurisdiction except as NON-RESIDENT ALIENS; have not committed any statutory

1

violations in either the State, County, City, Municipal or judicial jurisdiction; nor colluded or agreed to participate in any conspiracy of any nature with anyone else. Nor have your Affiants been made of any proof to the contrary;

3. Your Affiants are not aware nor have your Affiants knowingly participated in any violation of any state statute, any crimes, any torts or acts deemed as state or federal offenses; nor have your Affiants knowingly colluded or conspired with anyone for any reason of criminal intent or otherwise; nor are your Affiants aware of any proof to the contrary;

4. Your Affiants have not caused nor allowed, nor did your Affiants permit or authorize or perform any act or action of any sort regarding FRAUD or intent to commit FRAUD; nor did your Affiants willfully, unlawfully, feloniously, knowingly, and or intentionally purport to engage in any activity which would cause any breach of contract regarding any contracts, and or agreements, specific or non-specific of any proof to the contrary;

5. You Affiants have not caused or allowed or acted in contrary to the form, force and effect of 28 U.S.C.§§ 1331 and 1391 made and provided, or against the peace and dignity of the State of Wisconsin; nor did your Affiants permit or authorize of perform any act in violation of 28 U.S.C.§§ 1331 and 1391, and, to date, are unaware of any proof to the contrary.

6. Your Affiants are Trustees appearing specially on behalf of a Trust.

7. On August 4, 2000, the Internal Revenue Service (hereinafter "IRS") sent a Notice of Deficiency for the tax years 1995, 1996, 1997 and 1998 to the Affiant, Gary Lee Pansier by USPS Certified Mail #7099 3400 0007 5796 4723. After issuing the Notice of Deficiency, the IRS made no attempt to collect tax liabilities until March 3, 2008. (*See* Exhibit "A")

Disclaimer: The Affiants have not knowingly, purposely or intentionally engaged in an activity

2

which would create a binding contract and are unaware of any law, statute or contract that requires payment without agreement. To date, Affiants are unaware of any proof of obligation to the contrary.

8.   The IRS did not send a Notice and Demand to the Affiant, Gary Lee Pansier within 60 days following the alleged assessment on February 26, 2001 for 1995, 1996, 1997 and 1998. The IRS did not serve any notices or correspondence to the Affiant Gary Lee Pansier from August 4, 2000 until March 3, 2010 regarding tax years 1995 through 1998. Disclaimer: The Affiants have not knowingly, purposely or intentionally engaged in an activity which would create a binding contract and are unaware of any law, statute or contract that requires payment without agreement. To date, Affiants are unaware of any proof of obligation to the contrary.

9.   On January 26, 2006, the Affiant, Gary Lee Pansier was arrested absent a warrant and was taken to the Brown County Jail in Green Bay, Wisconsin. The government claimed they had a 31-count indictment against him for violations of 18 U.S.C.§341 and 26 U.S.C.§§7206 and 7212. After the arraignment, the Affiant was released on his own recognizance after being incarcerated for seven (7) days. Disclaimer: The Affiants have not knowingly, purposely or intentionally engaged in an activity which would create a binding contract and are unaware of any law, statute or contract that requires payment without agreement. To date, Affiants are unaware of any proof of obligation to the contrary.

10.   On April 26, 2006, the Affiant was detained once again for seven (7) weeks for Contempt of Court because he refused to provide the government with signature and handwriting exemplars in order to put their case "in a better posture." The Court ruled that the Affiant would be incarcerated indefinitely and fined $1,000 a day until he agreed to aid the government in

3

prosecuting the government's case against him. The Affiant did not provide the Court with any signature or handwriting exemplars and was released on June 5, 2006 on his own recognizance and no fines were imposed against him. <u>Disclaimer</u>: The Affiants have not knowingly, purposely or intentionally engaged in an activity which would create a binding contract and are unaware of any law, statute or contract that requires payment without agreement. To date, Affiants are unaware of any proof of obligation to the contrary.

11. On August 5, 2006 a bench trial was held but the Court could not determine whether or not the government had proved their case beyond a reasonable doubt and requested additional briefs from both parties in order to determine if the element of fraud existed. Following the submission of briefs, the presiding judge recused himself and there was no further action on the case until January 26, 2007 when they designated a different judge who re-arrested the Affiant six weeks after he had a undergone a total hip replacement. The U.S. Marshalls took away all the Affiants' medical aids and prescription medication and discontinued the prescribed physical therapy sessions. The retrial did not take place until ten (10) months later, on June 18, 2007 in violation of the Speedy Trial Act. <u>Disclaimer</u>: The Affiants have not knowingly, purposely or intentionally engaged in an activity which would create a binding contract and are unaware of any law, statute or contract that requires payment without agreement. To date, Affiants are unaware of any proof of obligation to the contrary.

12. On October 26, 2007, the Affiant was sentenced to twenty-four (24) months incarceration and was released on August 26, 2008. The Court did not impose any fines or restitution on the Affiant, based on the economic reality principle and the fact that there was no tax loss to the government. <u>Disclaimer</u>: The Affiants have not knowingly, purposely or

4

intentionally engaged in an activity which would create a binding contract and are unaware of any law, statute or contract that requires payment without agreement. To date, Affiants are unaware of any proof of obligation to the contrary.

13. On January 8, 2008, the Affiant experienced severe chest pain in the Kenosha County Jail and after seven (7) hours was taken to intensive care at Kenosha Medical Center. Against the directives of the attending physician, the Affiant was returned to Kenosha County Jail five (5) days later and, once again, his prescribed medication was taken away by the government. Disclaimer: The Affiants have not knowingly, purposely or intentionally engaged in an activity which would create a binding contract and are unaware of any law, statute or contract that requires payment without agreement. To date, Affiants are unaware of any proof of obligation to the contrary.

14. On the same day the Affiant was released from prison, the IRS issued a levy on 100% of the Affiant's income for the alleged tax liabilities going back thirteen (13) years. As a condition of supervised release, the Affiants were ordered to file tax returns for 1999, 2000, 2001, 2002, 2003, 2004, 2005 and 2006. Disclaimer: The Affiants have not knowingly, purposely or intentionally engaged in an activity which would create a binding contract and are unaware of any law, statute or contract that requires payment without agreement. To date, Affiants are unaware of any proof of obligation to the contrary.

15. On October 17, 2008, the IRS began levying 100% of the Affiants' airline pension benefits from Prudential Insurance Company for 1995, 1996, 1997, 1998 in the amount of $158,322.50 without notifying the Affiants. (*See* Exhibit "B") Disclaimer: The Affiants have not knowingly, purposely or intentionally engaged in an activity which would create a binding

5

contract and are unaware of any law, statute or contract that requires payment without agreement. To date, Affiants are unaware of any proof of obligation to the contrary.

16. On November 6, 2008, the Affiants discovered through their Land Shark account that the IRS had filed a Notice of Federal Tax Lien on June 8, 2008 with the Register of Deeds in Marinette County, Wisconsin for 1995 through 1998 without notifying the Affiants. (*See* Exhibit "C") <u>Disclaimer</u>: The Affiants have not knowingly, purposely or intentionally engaged in an activity which would create a binding contract and are unaware of any law, statute or contract that requires payment without agreement. To date, Affiants are unaware of any proof of obligation to the contrary.

17. On November 12, 2008, the Affiants were forced into bankruptcy because the IRS was taking 100% of their income and the automatic stay went into effect. <u>Disclaimer</u>: The Affiants have not knowingly, purposely or intentionally engaged in an activity which would create a binding contract and are unaware of any law, statute or contract that requires payment without agreement. To date, Affiants are unaware of any proof of obligation to the contrary.

18. On December 29, 2008, the IRS filed a Motion for Relief from Stay to Allow the Internal Revenue Service to Continue Levying the Debtors' Pension. (*See In Re Gary Lee Pansier, et. al,* Case No. 08-32400-svk, U.S. Bankruptcy Court, EK-WI, Docket #8) The purpose of this motion was to obtain relief from the stay in bankruptcy court in order to continue levying the Affiants' airline pension; however, they failed to inform the Court that the levy was in violation of the stay in effect in the Tax Court Case, Docket No. 15849-06 and the Tax Court maintained jurisdiction over tax years 1996 through 2006 at this time. <u>Disclaimer</u>: The Affiants have not knowingly, purposely or intentionally engaged in an activity which would create a

binding contract and are unaware of any law, statute or contract that requires payment without agreement. To date, Affiants are unaware of any proof of obligation to the contrary.

19. On March 24, 2009 the U.S. Trustee filed a Motion to Extend the Time to Object to the Debtors' Discharge in order to conduct a Bankruptcy Rule 2004 Examination on the Affiants for the purpose of determining whether or not the Affiants had a beneficial interest in the real property under the name of Sheffield Crest Trust. (*See In Re Gary Lee Pansier, et. al,* Case No. 08-32400-svk, U.S. Bankruptcy Court, EK-WI, Docket #28) On February 18, 2009, the Court ordered the Affiants to produce to the Trustee, "all documents in their possession, custody or control (or the possession, custody or control of their attorneys, accountants or other agents) concerning the Sheffield Crust (*sic*) Trust, including the entire trust document, the lease between the Trust and the Debtors, and any other documents related to any other trusts of which the Debtors are or were grantors or beneficiaries from January 1, 2003 to the present." (*See In Re Gary Lee Pansier, et. al,* Case No. 08-32400-svk, U.S. Bankruptcy Court, EK-WI, Docket #30)

The Trustee requested addition time to review the documents; however, the Bankruptcy Court denied their motion stating they had ample time to review the documents and the Debtor's discharge should be promptly issued. (*See In Re Gary Lee Pansier, et. al,* Case No. 08-32400-svk, U.S. Bankruptcy Court, EK-WI, Docket #48) Disclaimer: The Affiants have not knowingly, purposely or intentionally engaged in an activity which would create a binding contract and are unaware of any law, statute or contract that requires payment without agreement. To date, Affiants are unaware of any proof of obligation to the contrary.

7

20.  On April 23, 2009, the government filed their WITHDRAWAL OF UNITED STATES OF AMERICA'S MOTION TO MODIFY STAY TO ALLOW THE INTERNAL REVENUE SERVICE TO CONTINUE LEVYING THE DEBTORS PENSION PLAN due to the fact that the levy was unlawful and the wrongfully seized funds would have to be returned to the Affiants.  On May 1, 2009, the IRS issued a Release of Levy because it was unenforceable and returned the funds to the Affiant four (4) years later on May 5, 2013.  (*See In Re Gary Lee Pansier, et. al,* Case No. 08-32400-svk, U.S. Bankruptcy Court, EK-WI, Docket #50)

Disclaimer: The Affiants have not knowingly, purposely or intentionally engaged in an activity which would create a binding contract and  are unaware of any law, statute or contract that requires payment without agreement. To date, Affiants are unaware of any proof of obligation to the contrary.

21.  The Notice of Federal Tax Lien filed on June 6, 2008 was unenforceable for the same reason as the Notice of Levy; however, on September 11, 2009, the IRS determined that "withdrawing the Notice of Federal Tax Lien would not be appropriate." The NFTL was allowed to expire on March 28, 2011.  Two years later, on March 25, 2013, the IRS Centralized Case Processing-Lien Unit issued a Revocation of Certificate of Release of Federal Tax Lien certifying that once again a mistake was made in allowing a NFTL against the Affiant was released and a new NFTL was filed on the tax periods of 1995-1998, arbitrarily extending the ten (10) year Statute of Limitations on collection to twenty (20) years, until 2021. (*See* Exhibit "D")

Disclaimer: The Affiants have not knowingly, purposely, or intentionally engaged in an activity which would create a binding contract, and are unaware of any law, statute or contract that requires payment without agreement.  To date, the Affiants are unaware of any proof of

8

obligation to the contrary.

    22. On May 12, 2009, the Affiants received a discharge in bankruptcy court. The IRS did not file a Proof of Claim or objection to the discharge. The acting Trustee determined that the Affiants were insolvent; there were no assets in the estate to be distributed to any creditors, and a discharge under 11U.S.C.§727 was granted on Bankr. No. 08-032400-svk, with no exceptions to discharge appearing in the order. (*See* Exhibit "E") <u>Disclaimer</u>: The Affiants have not knowingly, purposely or intentionally engaged in an activity which would create a binding contract and are unaware of any law, statute or contract that requires payment without agreement. To date, Affiants are unaware of any proof of obligation to the contrary.

    23. On May 21, 2009, the Affiants' case was dismissed in the pending Tax Court, Docket No. 15849-06 *Gary lee Pansier v. C.I.R.*, for lack of jurisdiction, based on the Notice of Objection by Senior IRS Counsel George Bezold who made the statement, "[W]ith respect to the years 1999 through 2006, no notice of deficiency authorized by I.R.C.§6212 or any collection due process notice under I.R.C.§§ 6320 or 6330 was mailed to petitioner and petitioner currently owes no amount for those years." Attorney Bezold also determined that the June 6, Notice of Federal Tax Lien and the June 5, 2008 Final Notice of Intent to Levy for 1995-1998 were sent to the wrong addressed and would have to be reissued. (*See* Exhibit "F") <u>Disclaimer</u>: The Affiants have not knowingly, purposely or intentionally engaged in an activity which would create a binding contract and are unaware of any law, statute or contract that requires payment without agreement. To date, Affiants are unaware of any proof of obligation to the contrary.

9

24. On December 2, 2009, the Affiants filed an Adversary Proceeding in the form of a complaint against the Internal Revenue Service to obtain a discharge of tax liabilities for 1995 through 2006. (*See In Re Gary Lee Pansier, et. al,* Case No. 09-02450-SVK, U.S. Bankruptcy Court, EK-WI) No one in the IRS has issued a declaration or sworn statement attesting under penalty of perjury that the Affiants had a tax liability for the years at issue. Disclaimer: The Affiants have not knowingly, purposely or intentionally engaged in an activity which would create a binding contract and are unaware of any law, statute or contract that requires payment without agreement. To date, Affiants are unaware of any proof of obligation to the contrary.

25. The Affiants have never been served with a notice from the IRS certifying under penalty of perjury that they have a liability to the U.S. Treasury or a notice certifying an amount due and owing for the tax periods of 1995 through 2006. Disclaimer: The Affiants have not knowingly, purposely or intentionally engaged in an activity which would create a binding contract and are unaware of any law, statute or contract that requires payment without agreement. To date, Affiants are unaware of any proof of obligation to the contrary.

26. The Bankruptcy Court in the adversary proceedings did not reach the issue of the Affiants' liability or what amounts were due and owing to the IRS. The Memorandum Decision was based on whether or not judicial estoppel should apply when the IRS used one set of facts to obtain a win in the previous tax court case, and a different set of facts to obtain an exception to discharge. The Court excused the mistakes of Senior Counsel Bezold and the IRS were excused as inadvertent blunders. (*See In re Pansier, et.al.,* U.S. Bankruptcy Court, ED-WI, Adv. Case No. 09-02450) Disclaimer: The Affiants have not knowingly, purposely or intentionally engaged in an activity which would create a binding contract and are unaware of any law, statute or contract

10

that requires payment without agreement. To date, Affiants are unaware of any proof of obligation to the contrary.

27.  The Court also excused the inadvertent blunders of the U.S. Department of Justice Trial Attorney Counsel Grayson Hoffman who maintained that when an Account Transcript for taxpayers show a RETURN DUE DATE OR RETURN RECEIVED DATE (WHICHEVER IS LATER) , this does not mean that this was the date that the IRS actually receives a return due to a "glitch in the system nationwide that has since been fixed." The District Court also determined that the RETURN RECEIVED DATE is the date that the IRS filed its Substitute for Returns for tax periods of 1995 through 1998.  This means that when the IRS did not receive a return on April 15, 1996 for the tax period of 1995, it immediately filed a  Substitute for Return on April 22, 1996.  Based on this premise, the decision of the Bankruptcy Court was affirmed. Disclaimer: The Affiants have not knowingly, purposely or intentionally engaged in an activity which would create a binding contract and  are unaware of any law, statute or contract that requires payment without agreement. To date, Affiants are unaware of any proof of obligation to the contrary.

28.  On March 5, 2010, the Affiants received an IRS Form CP90, Final Notice of Intent to Levy for tax periods of 1995-2006.  On March 8 2010, they filed IRS Form 12153 requesting a Collection Due Process Hearing consisting of a face-to-face hearing.  The Affiants did not receive a face-to-face hearing and did not receive a hearing at all until February 17, 2012.  (*See* Exhibit "G") Disclaimer: The Affiants have not knowingly, purposely or intentionally engaged in an activity which would create a binding contract and  are unaware of any law, statute or contract that requires payment without agreement. To date, Affiants are unaware of any proof of

11

obligation to the contrary.

29. In the February 17, 2012, letter received from Settlement Officer Anthony Diamantopolous he stated that had reviewed the information contained in the administrative file and that all legal and administrative requirements had been met pertaining to tax periods 1995 through 2006. S.O. Diamantopolous did not provide documentary evidence of any computer records, internal records, court records, or administrative files to the Affiants in the collection due process hearing, or with the Notices of Determination issued on January 8, 2013. (*See* Exhibit "H") Disclaimer: The Affiants have not knowingly, purposely or intentionally engaged in an activity which would create a binding contract and are unaware of any law, statute or contract that requires payment without agreement. To date, Affiants are unaware of any proof of obligation to the contrary.

30. Settlement Officer Diamantopoulos determined that the Affiants were not entitled to a §6320 collection due process hearing because the NFTL was filed in 2008 and "well past the deadline for requesting a timely CDP or an equivalent hearing" even though he was well aware that the Affiants could not possibly made a timely request for a Collection Due Process Hearing when the Notice of Federal Tax Lien filing for 1995 through 1998 was never sent to them. Disclaimer: The Affiants have not knowingly, purposely or intentionally engaged in an activity which would create a binding contract and are unaware of any law, statute or contract that requires payment without agreement. To date, Affiants are unaware of any proof of obligation to the contrary.

31. On January 8, 2013, S.O. Diamantopoulos issued the Notices of Determination sustaining levy action for tax periods 1995 through 2006 claiming the Affiants had submitted

12

"questionable documentation" along with their Offer in Compromise on April 12, 2012. (*See* Exhibit "I") <u>Disclaimer</u>: The Affiants have not knowingly, purposely or intentionally engaged in an activity which would create a binding contract and are unaware of any law, statute or contract that requires payment without agreement. To date, Affiants are unaware of any proof of obligation to the contrary.

32. . On February 4, 2013, the Affiants sent the Settlement Officer their notarized Affidavits of Truth by USPS Certified Mail #7011 2970 0002 3946 1268, and received by S.O Diamantopolous on February 7, 2013. Within the Affidavits was their request to meet with the SO and give him an opportunity to produce certified and authenticated copies of the actual CP504 notices that he claimed were "forged or altered" when the Affiants paid them on November 11, 2009 for the purpose of "swaying the settlement officer to accept their offer-in-compromise in 2012." (*See* Affidavits of Truth by Gary Lee Pansier and Joan R. Pansier Exhibit "J") <u>Disclaimer</u>: The Affiants have not knowingly, purposely or intentionally engaged in an activity which would create a binding contract and are unaware of any law, statute or contract that requires payment without agreement. To date, Affiants are unaware of any proof of obligation to the contrary.

33. The Affiants clearly stated in the Affidavit of Truth that the settlement officers' failure to agree to this meeting or respond to the affidavit is an admission that he intentionally made false and libelous accusations in the Notices of Determination. S.O. Anthony Diamantopolous did not respond to the Affidavits or attempt to contact the Affiants. S.O. Diamantopolous did not provide a counter affidavit to challenge or controvert the allegations of fact by the Affiants. In the absence of any counter affidavit, the facts in the Affiants' affidavits

13

are deemed to be admitted as true, correct and deemed established. Therefore, each and every statement made in Notices of Determination made by S.O. Anthony Diamantopolous on January 8, 2013 is null and void and any type of collection activity on the part of the IRS cannot be sustained. Disclaimer: The Affiants have not knowingly, purposely or intentionally engaged in an activity which would create a binding contract and are unaware of any law, statute or contract that requires payment without agreement. To date, Affiants are unaware of any proof of obligation to the contrary.

34. On January 29, 2013, the Affiants filed their petition in Tax Court based on the un-controverted evidence that the Milwaukee Appeals Office issued Notices of Determination based on false allegations and it was an abuse of discretion when the settlement officer withdrew the Affiants' Offer-in-Compromise that was being processed by the Memphis COIC. The Appeals Office participated in prohibited *ex parte* communication with IRS employees; failed to utilize law or judicial decisions to weigh facts; failed to render an independent or unbiased decision, and violated the Anti-retaliation policy after documented evidence was presented to them. In their decision, the Tax Court used an inappropriate standard of review in order to discredit the Affiants and used disparaging personal remarks that were unwarranted. The Tax Court admitted that "[T]he record here is uncertain and disputed between the parties but ultimately made a speculative a *post-hoc* rationalization that a remand by this Court for the purpose of reconsideration would be futile and unproductive" based on what the Court perceived was the wrong attitude which somehow disqualified the Affiants from their right to due process or the opportunity to submit an Offer-in-Compromise in order to obtain a fresh start. Disclaimer: The Affiants have not knowingly, purposely or intentionally engaged in an activity which would

14

create a binding contract and are unaware of any law, statute or contract that requires payment without agreement. To date, Affiants are unaware of any proof of obligation to the contrary.

35.  On February 27, 2015, Affiants appealed the Tax Court decision to the 7th Circuit Court of Appeals. (*See Gary Lee Pansier, et. al., v. C.I.R.*, No. 15-1386 )  In a NONPRECEDENTIAL DISPOSITION, the Appeals Court affirmed the decision of the Tax Court based on an alternative ground that "Pansiers' submitted questionable documents" in the Collection Due Process Hearing even though there were no affidavits or declarations submitted by the Commissioner of Internal Revenue that controverted any of the Affidavits submitted by the Affiants or the testimony of the Forensic Document Examiner that the CP504 Notices had not been altered or forged in any way.  (*See* Exhibit "K")  <u>Disclaimer</u>: The Affiants have not knowingly, purposely or intentionally engaged in an activity which would create a binding contract and are unaware of any law, statute or contract that requires payment without agreement. To date, Affiants are unaware of any proof of obligation to the contrary.

36.  On July 19, 2017, the Affiants received a letter from Ryan Benson, Revenue Officer representing the Internal Revenue Service, 440 Security Boulevard, M/S 5224 GRB, Green Bay, Wisconsin 54313.  The revenue officer claimed he had evidence that "[A]ccording to our records, it appears you have property in the name of Sheffield Crest Trust.  I have not been able to find any documentation for the Sheffield Crest Trust, and so I am requesting that you provide me with the trust documents pertaining to the trust. I would appreciate it if you could mail those documents to me at the address listed on this letter.  If you do not provide those documents, I will assume that there are no trust documents and proceed accordingly." (*See* Exhibit "L") <u>Disclaimer</u>: The Affiants have not knowingly, purposely or intentionally engaged in

15

an activity which would create a binding contract and are unaware of any law, statute or contract that requires payment without agreement. To date, Affiants are unaware of any proof of obligation to the contrary.

37. On August 4, 2017, the Affiants responded to Revenue Officer Benson's letter by USPS Certified Mail #7016 1370 0000 3812 9929. The letter requested an clarification as to the revenue officer's statements because initially he claimed that records show that the Affiants have property in the name of Sheffield Crest Trust, then contradicted his own statement by claiming he was unable to find any documentation for the trust. (*See* Exhibit "M") <u>Disclaimer</u>: The Affiants have not knowingly, purposely or intentionally engaged in an activity which would create a binding contract and are unaware of any law, statute or contract that requires payment without agreement. To date, Affiants are unaware of any proof of obligation to the contrary.

38. The Affiants provided RO Benson with evidence that the doctrines of *res judicata* and *collateral estoppel* precluded him from revisiting or re-litigating the issue of whether or not the Affiants have a beneficial interest in Sheffield Crest Trust and provided him their own court cases that verifies this position. The revenue officer was informed that these proceedings are a matter of public record that are accessible to him and can easily be verified. The Affiants requested a copy of the evidence that RO Benson was relying upon by August 26, 2017; otherwise, they would conclude that no such evidence exists and his threats are based on nothing more than a frivolous attempt to harass and intimidate us which is exactly the type of IRS tactics the essential doctrines of *res judicata* and *collateral estoppel* were designed to prevent. <u>Disclaimer</u>: The Affiants have not knowingly, purposely or intentionally engaged in an activity which would create a binding contract and are unaware of any law, statute or contract that

16

requires payment without agreement. To date, Affiants are unaware of any proof of obligation to the contrary.

39. Instead of responding to the August 4, 2017 letter or providing Affiants with evidence of his allegations that they had property in the name of Sheffield Crest Trust, on August 9, 2017, RO Benson served IRS Form 6680W(ICS) Notice of Levy to their pension provider Prudential Insurance Company demanding they direct 100% the monthly benefits to the IRS *and* filed a Notice of Federal Tax Lien with the Register of Deeds in Marinette, Wisconsin on September 26th on 1999 through 2006. <u>Disclaimer</u>: The Affiants have not knowingly, purposely or intentionally engaged in an activity which would create a binding contract and are unaware of any law, statute or contract that requires payment without agreement. To date, Affiants are unaware of any proof of obligation to the contrary.

40. The Affiants had no knowledge of the fact that the IRS had seized 100% of their monthly pension benefits until the received the attached letter from Prudential Insurance Company of America Defined Benefits Participant Department on August 9, 2017. (*See* Exhibit "N") <u>Disclaimer</u>: The Affiants have not knowingly, purposely or intentionally engaged in an activity which would create a binding contract and are unaware of any law, statute or contract that requires payment without agreement. To date, Affiants are unaware of any proof of obligation to the contrary.

41. The Affiants submitted a Freedom of Information (Privacy Act) Request for a copy of the IRS Notice of Levy served on Prudential Insurance Company. The disclosure officers' response stated that:

**"We completed the research for your requested documents and found that they are**

**obsolete. Therefore, we have no documents responsive to your request.**" (*See* Exhibit "O")

As of March 9, 2018, Revenue Officer Ryan Benson has seized $28,323.89 of the Affiants' pension benefits based on a Notice of Levy that the IRS has no record of; pension benefit funds that have not been credited to any alleged tax liabilities according to the Plaintiffs' Complaint.

Disclaimer: The Affiants have not knowingly, purposely or intentionally engaged in an activity which would create a binding contract and are unaware of any law, statute or contract that requires payment without agreement. To date, Affiants are unaware of any proof of obligation to the contrary.

42. On September 18, 2017, RO Benson mailed a Summons ordering Affiants to drive sixty miles to Green Bay, Wisconsin and appear at 9:00 a.m. on October 9, 2017:

> "You are hereby summoned and required to appear before RYAN BENSON, an officer of the Internal Revenue Service to give testimony and to bring with you and to produce for examination the following books, records, papers, and other data relating to the tax liability or the collection of the tax liability or for the purpose of inquiring into any offense connected with the administration or enforcement of the internal revenue laws concerning the person identified above for the periods shown.
>
> **1. Any and all documents relating to Sheffield Crest Trust."** (*See* Exhibit "P")

Disclaimer: The Affiants have not knowingly, purposely or intentionally engaged in an activity which would create a binding contract and are unaware of any law, statute or contract that requires payment without agreement. To date, Affiants are unaware of any proof of obligation to the contrary.

43. Before the Affiants were given an opportunity to comply with the Summons to provide thirty-two years of documents, Revenue Officer Benson filed a Notice of Federal Tax

18

Lien naming Sheffield Crest Trust as Nominee of Joan R Pansier. (*See* Exhibit "Q") Absent from the Nominee Notice of Federal Tax Lien itself is a legal description of the real property it allegedly pertains to. <u>Disclaimer</u>: The Affiants have not knowingly, purposely or intentionally engaged in an activity which would create a binding contract and are unaware of any law, statute or contract that requires payment without agreement. To date, Affiants are unaware of any proof of obligation to the contrary.

44. The Summons issued by RO Benson did not comply with the provisions of the Internal Revenue Code §7603 which requires the Summons to describe with reasonable certainty the particular papers, records or books; it is overly broad and vague in its demands, and was initiated for an improper purpose. On October 1, 2017, the Affiants sent a letter to RO Benson informing him that the issue of whether or not they have a beneficial interest in any real property was previously determined in the previous bankruptcies in 1990, in 1998, and 2008. Commencement of a bankruptcy case creates an estate comprises all legal or equitable interests of a debtor in property pursuant to 11 U.S.C.A. §541(a)(1) as reflected in the sworn schedules that are submitted in the case; schedules that were provided to RO Benson in response to the Summons. The Affiants also requested a clarification from RO Benson but he continued to refuse to respond to any of their correspondence. (*See* Exhibit "R"). <u>Disclaimer</u>: The Affiants have not knowingly, purposely or intentionally engaged in an activity which would create a binding contract and are unaware of any law, statute or contract that requires payment without agreement. To date, Affiants are unaware of any proof of obligation to the contrary.

45. The attached Office of Chief Counsel Memorandum, dated September 25, 2017 was obtained by the Affiants through a Freedom of Information (Privacy Act) Request. (*See* Exhibit

19

"S") The Memorandum authorized Revenue Officer Benson to file a nominee lien in the name of the Sheffield Crest Trust before the Affiants were given an opportunity to comply with the Summons to provide "[A]ny and all documents related to Sheffield Crest Trust." Disclaimer: The Affiants have not knowingly, purposely or intentionally engaged in an activity which would create a binding contract and are unaware of any law, statute or contract that requires payment without agreement. To date, Affiants are unaware of any proof of obligation to the contrary.

46. Without waiting for the Affiants to provide requested documents and without ever looking at the trust or any documents related to Sheffield Crest Trust other than a copy of a 1985 Warranty Deed and an outdated and discredited 1993 Assignee's DECLARATION of Land Grant, Attorney Grosenick authorized Revenue Officer Benson to file a nominee lien on Sheffield Crest Trust. Attorney Grosenick based this authorization on the false presumption that Sheffield Crest Trust is a revocable trust, that Joan Pansier is a trustee which somehow gives her a beneficial interest in the trust, even though he admitted that he has no documentary evidence to support this statement. Disclaimer: The Affiants have not knowingly, purposely or intentionally engaged in an activity which would create a binding contract and are unaware of any law, statute or contract that requires payment without agreement. To date, Affiants are unaware of any proof of obligation to the contrary.

47. In the Chief Counsel Memorandum General Attorney Grosenick relied on case law from the 1st Circuit, 9th Circuit and a Connecticut Bankruptcy Court and a non-existent Wisconsin Statute (Wis.Stat. §701.06(6)(a), dealing with settlers who are also beneficiaries. Again, he admitted that had no documents to show that the Sheffield Crest Trust has other trustees or beneficiaries. Disclaimer: The Affiants have not knowingly, purposely or intentionally

20

engaged in an activity which would create a binding contract and are unaware of any law, statute or contract that requires payment without agreement. To date, Affiants are unaware of any proof of obligation to the contrary.

48. Attorney Grosenick admitted that he had no documentation to show that a nominee situation is present; that the trust was created in 1985 for the purpose of tax avoidance; whether of nott the property was ever used as collateral for a loan; that the Affiants pay the property tax or maintenance costs Attorney Grosenick never bothered to check the information provided to RO Benson that would show they did own any real property after September 25, 1985 and they do not own any real property now. Disclaimer: The Affiants have not knowingly, purposely or intentionally engaged in an activity which would create a binding contract and are unaware of any law, statute or contract that requires payment without agreement. To date, Affiants are unaware of any proof of obligation to the contrary.

49. RO Benson and Attorney Grosenick are both well aware that court records from *In re Pansier*, 90-20906-JES (Bankr. ED-WI 1990), *In re Pansier*, 98-27488-JES (Bankr. ED-WI 1998), and *In re Pansier*, 08-32400-SVK (Bankr. ED-WI 2008), all contain sworn statements of the Affiants' personal assets and property, none of which include evidence that Affiants were trustees or beneficiaries of a trust or have property in the name of Sheffield Crest Trust or any other trust name. Disclaimer: The Affiants have not knowingly, purposely or intentionally engaged in an activity which would create a binding contract and are unaware of any law, statute or contract that requires payment without agreement. To date, Affiants are unaware of any proof of obligation to the contrary.

50. On October 4, 2017, the Affiants received a letter from RO Benson informing them "if documents related to the Trust, including any court documents which preclude the IRS from revisiting or re-litigating the trust issue, you can establish that the Trust is not a fiduciary or transferee." (*See* Exhibit "T") <u>Disclaimer</u>: The Affiants have not knowingly, purposely or intentionally engaged in an activity which would create a binding contract and are unaware of any law, statute or contract that requires payment without agreement. To date, Affiants are unaware of any proof of obligation to the contrary.

51. On November 6, 2017, the Affiants provided RO Benson with copies of the Bankruptcy Schedules for *In re Pansier*, 90-20906-JES (Bankr. Ed-WI 1990), *In re Pansier*, 98-27488-JES (Bankr. Ed-WI 1998), *In re Pansier*, 08-32400-SVK (Bankr. Ed-WI 2008), Schedule B-1, Real Property Equity Transfer, Certificate of Organization for the Limited Liability Company, Casey's Shadow, Bank Resolution and Minutes, Notices in Affidavit Form, and a Freedom of Information (Privacy Act) Request and Response dated September 5, 2017. (*See* Exhibit "U ") All the documents establish that Sheffield Crest Trust is not a "fiduciary or transferee" as stipulated by RO Benson. The revenue officer chose not to respond to the Affiants, and refused to release the Nominee Lien or the Levy on the Affiants' pension even when the IRS Disclosure office said a Notice of Levy for 1995 through 2006 does not exist. Excerpts from the ICS Transcript dated November 15, 2017 shows that "[R]O reviewed the information and does not quite understand the information provided." The transcript also shows that the Summons was closed and not enforced. <u>Disclaimer</u>: The Affiants have not knowingly, purposely or intentionally engaged in an activity which would create a binding contract and are unaware of any law, statute or contract that requires payment without agreement. To date,

Affiants are unaware of any proof of obligation to the contrary.

52. The IRS chose not to respond to the Affidavits provided to them on November 6, 2017 and did not provide a counter affidavit to challenge or controvert the allegations of fact contained therein. In the absence of any counter affidavit, the facts in the affidavits submitted by the Affiants are deemed to be admitted as true, correct and establish that Sheffield Crest Trust is not a Nominee of Joan R. Pansier. <u>Disclaimer</u>: The Affiants have not knowingly, purposely or intentionally engaged in an activity which would create a binding contract and are unaware of any law, statute or contract that requires payment without agreement. To date, Affiants are unaware of any proof of obligation to the contrary.

53. On December 13, 2017, the Plaintiff, United States of America filed an undated and unverified Complaint to reduce tax assessments to judgment alleging tax liabilities. The Complaint is asking the Court to enter judgment in favor of the United States and against Gary L. Pansier and Joan R. Pansier for $272,772.8. As of this writing, the Affiants have yet to be made factually aware of *prima facie* evidentiary statement of facts or cause of action on behalf of the Plaintiff, United States of America. Therefore, the Affiants are unable to admit or deny their claims, charges or accusations made against them. <u>Disclaimer</u>: The Affiants have not knowingly, purposely or intentionally engaged in an activity which would create a binding contract and are unaware of any law, statute or contract that requires payment without agreement. To date, Affiants are unaware of any proof of obligation to the contrary.

54. Throughout this process, Affiants did realize costs and damages, some of which are ongoing, damages and costs to be recovered associated within the prosecution of this Affidavit and are as follows:

23

Research - $3,000.00.00

Document Preparation - $2,300.00

Damages - Compensatory, Pecuniary, Punitive (Involuntary Servitude, Wrongful Levy,

Loss of Consortium) - $895,000.00

**Total:** **- $900,300.00**

WHEREFORE, Gary Lee Pansier, Authorized Representative of GARY LEE PANSIER,

TRUSTEE for GARY LEE PANSIER TRUST, and Joan R. Pansier, Authorized Representative

of JOAN R. PANSIER, TRUSTEE for JOAN R. PANSIER TRUST submit their NOTICE OF

FILING and AFFIDAVIT OF FACTS to the Court that are true, correct and certain, to the best of

their knowledge.

Dated this 8th Day of March, 2018

By: _____
    Gary Lee Pansier, Authorized Representative, ARR

By: _____
    Joan R. Pansier, Authorized Representative, ARR

State of Wisconsin   )
                 ) s.s.
County of Marinette   )

NOTARY: Subscribed and affirmed to me on this _9_ day of March, 2018, by Gary Lee
Pansier and Joan R. Pansier known to me or proved to me on the basis of satisfactory evidence to
be the person who appeared before me.

Signature of Notary: _____ My Commission Expires: _12/18/20_

JEAN FRANZEN
NOTARY
PUBLIC
STATE OF WISCONSIN

24